UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

KENT RICHARD JONES,

          Petitioner,

    v.

Commissioner of Corrections JOAN
FABIAN, and Warden JOHN KING,

          Respondents.

Civil No. 09-2781 (JNE/FLN)

**REPORT AND RECOMMENDATION**

Kent Richard Jones, Minnesota Correctional Facility - Stillwater, 970 Picket Street North, Bayport, Minnesota, 55003-1489, Petitioner, pro se.

Kimberly Parker, Assistant Minnesota Attorney General, Suite 1800, 445 Minnesota Street, St. Paul, Minnesota, 55101-2134, for Respondents.

FRANKLIN L. NOEL, United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of Kent Richard Jones for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondents have filed a response, (Docket Nos. 6-8), contending that the petition should be dismissed, and Petitioner has filed a Reply Memorandum entitled "Plaintiff's Motion Answering The Respondent's Motion In Opposition To The Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus Filed By Plaintiff," (Docket No. 22).[1]

---

[1] Petitioner's Reply Memorandum is 45 pages long, and his habeas petition was accompanied by an initial memorandum, (Docket No. 2), which is 28 pages long. Although the Court has not counted all of the words in these two memoranda, (consisting of 73 pages altogether), it clearly appears that Petitioner has far exceeded the aggregate 12,000 word limit for both memoranda, which is prescribed by Local Rule 7.1(d). Petitioner's apparent violation of Local Rule 7.1(d) is both puzzling and vexing, because the Court previously struck Petitioner's first noncompliant Reply Memorandum, (Docket No. 12), and specifically ordered him to abide by the Rule 7.1(d) word limit. (See Order dated February

The case has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court will recommend that Petitioner's habeas corpus petition be DENIED, and that this action be DISMISSED WITH PREJUDICE.

## I. BACKGROUND

In November 2006, a Minnesota state court jury found Petitioner guilty of first degree murder, second degree murder, and first degree criminal sexual conduct. Petitioner was sentenced to life in prison, and he is presently serving his sentence at the Minnesota Correctional Facility in Stillwater, Minnesota.

The apposite factual and procedural background of Petitioner's case has been aptly summarized by the Minnesota Supreme Court as follows:

> "Linda and Charles Jensen were married in 1971, divorced 8 years later, and remarried in 1991. They lived together with her young son and infant daughter in Big Lake, Minnesota. Their oldest son, Andrew, lived nearby. Appellant Kent Richard Jones [Petitioner here] and his wife Deborah lived a short distance from the Jensens' home.
>
> On February 24, 1992, Charles discovered Linda's dead body in the bedroom of their home. Her nude body was partially covered by a comforter, which had been pinned to her chest with a knife. Charles immediately notified law enforcement officials, who arrived at the scene shortly thereafter. The police conducted an extensive investigation, but found almost no physical evidence in the home. The sheets from the bed were missing and have never been located, no fingerprints discovered in the home were of sufficient quality to yield an identification, and a K-9 unit survey of the area around the Jensen residence uncovered no other evidence.

26, 2010; [Docket No. 19].) Even though it appears that Petitioner has flouted both the Local Rules and the Court's prior order, his current Reply Memorandum, (Docket No. 22), is nevertheless accepted by the Court, and the arguments presented therein have been fully considered.

An autopsy revealed that Linda had been beaten, sexually assaulted anally and vaginally, strangled, and slowly stabbed numerous times in the chest. A quantity of semen was recovered from Linda's body, and it was determined that she had been killed in the course of a criminal sexual assault. Based on a number of factors, the medical examiner concluded that Linda died sometime on the morning of February 24, likely between 8:00 and 10:00 a.m.[2]

Law enforcement officers initially focused their investigation on Charles and Andrew Jensen, whom they considered the most likely suspects. Officers also interviewed residents of the neighborhood to determine if anyone had observed anything unusual on the morning of the murder. Jones was briefly interviewed at his residence, but did not mention that he knew Linda or her family, or that he had seen any suspicious activity on the day of the murder.

Semen found at the crime scene yielded a DNA profile, which was compared against samples from approximately 80 suspects and a national DNA database, but no match was found. Investigators reviewed over 1,000 other possible leads, but without a DNA match or other evidence to identify a perpetrator, the case went cold.

In 2000, a citizen informant came forward with information connecting Jones to Linda Jensen's murder. Subsequently, a search warrant was obtained for a sample of Jones's DNA. Testing of that sample revealed that Jones's DNA matched that of the semen found on Linda's body.

The State convened a grand jury, which indicted Jones for first-degree murder committed during the course of criminal sexual conduct, in violation of Minn.Stat. § 609.185(2) (1990); second-degree intentional murder, in violation of Minn.Stat. § 609.19(1) (1990); and first-degree criminal sexual conduct, in violation of Minn.Stat. § 609.342, subd. 1(e)(i) (2006). That indictment was subsequently quashed, but a second grand jury again indicted Jones on all three counts. Jones moved to dismiss the second indictment, but his motion was denied.

The first trial commenced in November 2001. Jones testified in his defense and admitted that he had known Linda Jensen and that they had engaged in a brief extramarital affair. The semen found on Linda, he claimed, had been deposited when the two had intercourse the day before the murder. Following the trial, the jury found Jones guilty of all three counts of the indictment. Subsequently, this court [i.e., the Minnesota Supreme Court] reversed that conviction, concluding, inter alia, that the district court

<hr>

[2] Petitioner disputes the medical examiner's time-of-death determination.

erroneously excluded alternative perpetrator evidence.  State v. Jones, 678 N.W.2d 1, 21, 26 (Minn.2004) (Jones I).  The case was remanded for retrial. Id. at 21.

Before the second trial, Jones was interviewed by law enforcement.  During that interview, Jones admitted that he had sexual intercourse with Linda on the morning of her murder, not the night before as he had earlier claimed.

At the second trial, the State presented evidence that Jones's DNA matched the semen in Linda Jensen's body, and investigators testified regarding the changes in Jones's story over the course of their investigation.  Jones also testified in his own defense.  Jones claimed that he lied at the first trial based on discussions with his counsel, and because he feared he would be convicted if he admitted being with Linda on the morning of her death.  He also claimed to have seen an unidentified truck pull into the Jensens' driveway shortly after he left the Jensens' home on the morning Linda was killed.  Jones attempted to paint Charles Jensen as an alternative perpetrator, but Charles testified that he was elsewhere for most of the day, and his alibi was corroborated by a number of witnesses and documentary evidence.  During cross-examination, the prosecution pointed out the inconsistencies in Jones's story and his history of dishonest behavior, as well as the fact that Jones admitted perjuring himself at his first trial. The jury returned guilty verdicts on all three counts of the indictment."

State v. Jones, 753 N.W.2d 677, 684-86 (Minn. 2008) [hereafter "Jones II"].

After Petitioner was convicted at his second trial, he filed a direct appeal with the Minnesota Supreme Court.[3]  Three grounds for relief were raised in a brief filed by Petitioner's appellate counsel:

(1) that Petitioner was denied a fair trial because of several instances of prosecutorial misconduct;

(2) that the trial court erroneously admitted evidence of Petitioner's sexual relationship with his wife, in violation of Minnesota's rules of evidence pertaining to (a) marital communications, and (b) relevancy; and

---

[3]  Under Minnesota law, appeals in first degree murder cases are taken directly to the Supreme Court, rather than the Minnesota Court of Appeals.  Minn.Stat. § 632.14.

4

(3) that Petitioner was deprived of his constitutional right to present a defense, because the trial court erroneously excluded certain evidence offered in support of his defense.[4]

Petitioner himself filed a separate "pro se" brief in support of his direct appeal, arguing that:

(1) the trial court wrongly denied Petitioner's motion to suppress the evidence obtained by a search warrant that allowed law enforcement officials to take a sample of Petitioner's DNA; and

(2) the grand jury proceedings that produced Petitioner's indictment were flawed, and hence the indictment, (as well as Petitioner's subsequent conviction), should have been vacated, because (a) an unauthorized person was in the grand jury room during the proceedings, (b) the prosecution wrongly presented certain inadmissible and prejudicial evidence to the grand jury, (c) the prosecution wrongly failed to present certain exculpatory evidence to the grand jury, and (d) the grand jury's indictment lacked probable cause.[5]

The three claims raised by Petitioner's appellate counsel were carefully reviewed, and rejected on the merits, by the Minnesota Supreme Court. Jones II, 753 N.W.2d at 686-97. However, the separate claims presented in Petitioner's pro se brief, (pertaining to the search warrant and grand jury proceedings), were not addressed on the merits, because all of those claims were found to be barred by Minnesota state procedural rules. See id.

---

[4] A copy of the brief filed by Petitioner's attorney in Jones II is included in the current record in Respondent's Appendix, (Docket No. 8), Exhibit 7.

[5] A copy of Petitioner's pro se brief in Jones II is included in the current record in Respondent's Appendix, (Docket No. 8), Exhibit 8.

at 697 ("none of Jones's pro se claims will be considered in this second direct appeal").

Thus, the Minnesota Supreme Court ultimately upheld Petitioner's conviction and life sentence in Jones II. Petitioner did not thereafter seek post-conviction relief in the state courts. (Petition, [Docket No. 1], p. 2, § 10.)

On October 7, 2009, Petitioner filed his current petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This petition presents seven grounds for relief. In Ground One, Petitioner challenges the legality of the search warrant that allowed the State to obtain a sample of his DNA. Grounds Two through Four raise alleged errors pertaining to the grand jury proceedings. Ground Five is a collection of prosecutorial misconduct arguments. Ground Six challenges the admissibility of certain evidence pertaining to Petitioner's sexual relationship with his wife. And in Ground Seven, Petitioner claims that he was deprived of his constitutional right to present evidence in support of his defense.

For reasons discussed more fully below, the Court finds that Petitioner is not entitled to relief on any of the seven claims presented in his habeas corpus petition. Ground One – the search warrant claim – is simply not reviewable in a federal habeas corpus proceeding. Grounds Two, Three and Four – the various grand jury claims – cannot be adjudicated on the merits here, because they have been procedurally defaulted. And Grounds Five, Six and Seven – involving alleged prosecutorial misconduct, spousal testimony, and the right to present a defense – are not sustainable under the exacting standard of review that is applied to federal habeas corpus petitions.

## II. THE UNREVIEWABLE CLAIM (GROUND ONE)

In Petitioner's first ground for relief, he contends that his convictions should be vacated, because they are based on evidence obtained by means of an illegal search and

seizure, which violated his rights under the Fourth Amendment. Petitioner argues that the search warrant that allowed law enforcement authorities to obtain his DNA was invalid, because "the affidavit accompanying the application for a search warrant 'did not' provide even close to sufficient basis to issue the search warrant." (Petitioner's Memorandum, [Docket No. 2], pp. 1-2.)[6]

Petitioner's Fourth Amendment claim is barred by the Supreme Court's decision in Stone v. Powell, 428 U.S. 465 (1976). There, the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 482.

"[A] Fourth Amendment claim is Stone-barred, and thus unreviewable by a federal habeas court, unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." Willett v. Lockhart, 37 F.3d 1265, 1273 (8th Cir. 1994), cert. denied, 514 U.S. 1052 (1995). See also Poole v. Wood, 45 F.3d 246, 249 (8th Cir.), cert. denied, 515 U.S. 1134 (1995). "[A] 'mere

---

[6] The search warrant was issued based on information obtained from a woman who had an affair with Petitioner before Linda Jensen's murder. Approximately eight years after the murder, the woman told police that she recalled a telephone conversation with Petitioner that occurred shortly after the murder. During that conversation, the woman mentioned the murder, and Petitioner allegedly became angry. He later told the woman that he had known Linda Jensen, and that he had seen her jogging in their neighborhood, and talked to her on occasion. Jones I, 678 N.W.2d at 7. Based on this information, the police began to investigate whether Petitioner could have been involved in Linda Jensen's murder. When Petitioner refused to provide a DNA sample voluntarily, the police obtained the warrant at issue here. The application for the warrant was based largely on the information provided by Petitioner's former mistress. Id.

disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process.'" Chavez v. Weber, 497 F.3d 796, 802 (8th Cir. 2007), quoting Capellan v. Riley, 975 F.2d 67, 72 (2nd Cir. 1992).

The determination of whether there has been an "unconscionable breakdown" in a state's procedures does not require a review of the state courts' fact-finding process, or a review of the state courts' application of Fourth Amendment law. Willett, 37 F.3d at 1272. To the contrary, federal courts "are not to consider whether full and fair litigation of the claims in fact occurred in the state courts, but only whether the state provided an opportunity for such litigation." Id. at 1273 (emphasis in the original). On federal habeas review, the "inquiry focuses on whether [the petitioner] received an opportunity for full and fair litigation of his claim, not on whether legal or factual error in fact occurred." Chavez, 497 F.3d at 802.

The Court finds that the rule of Stone v. Powell is clearly applicable here. The record shows that Petitioner had ample opportunities to present his Fourth Amendment claim in his state court proceedings. The trial court conducted a pre-trial hearing on Petitioner's Fourth Amendment argument, and denied his motion to suppress the evidence obtained by the search warrant at issue. Jones I, 678 N.W.2d at 8. That ruling was later upheld by the Minnesota Supreme Court in Jones I. The State Court carefully evaluated Petitioner's Fourth Amendment claim, and fully explained why that claim was rejected on the merits. Id. at 11-13.

The Eighth Circuit Court of Appeals has previously determined that Minnesota law provides adequate opportunities for Minnesota state criminal defendants to raise Fourth Amendment challenges. Poole, 45 F.3d at 249. In this case, Petitioner not only had an

opportunity to present his Fourth Amendment claim in the state courts, his claim actually was raised, considered, discussed, and adjudicated on the merits, in both the trial court, and the Minnesota Supreme Court. Petitioner does not deny that those proceedings occurred, nor does he deny that they gave him an opportunity to litigate his current Fourth Amendment claim.

Petitioner obviously disagrees with the outcome of the state court proceedings, but he cannot "relitigate" his Fourth Amendment claim on the merits in a federal habeas corpus proceeding. Id. He also cannot show an "unconscionable breakdown" in the state court procedures, simply by arguing that the state courts allegedly erred. Again, a "'mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process.'" Chavez, 497 F.3d at 802.

Thus, the resolution of Petitioner's current Fourth Amendment illegal search and seizure claim is simple and straightforward. Because Petitioner received a full and fair opportunity to present his claim in the Minnesota state courts, federal habeas review of that claim is barred by Stone v. Powell.

## III. PROCEDURALLY DEFAULTED CLAIMS (GROUNDS TWO, THREE AND FOUR)

Grounds Two, Three and Four of Petitioner's current habeas corpus petition present three separate challenges to the grand jury proceedings that resulted in Petitioner's indictment for Linda Jensen's murder. In Ground Two, Petitioner contends that his indictment was based on a collection of false, unreliable or misleading DNA evidence, as well as other allegedly "inadmissible" evidence, all of which, according to Petitioner, should have been excluded from the grand jury proceedings. (Petitioner's Memorandum, [Docket No. 2], pp. 3-11.) In Ground Three, Petitioner claims that the grand jury proceedings were

fatally defective because of the prosecutor's alleged "failure to disclose exculpatory evidence to the grand jury." (Id., p. 12.) Petitioner specifically contends that his wife should have been required to testify before the grand jury, because she would have provided an alibi, by testifying that Petitioner was home with her on the day of Linda Jensen's murder.[7] In Ground Four, Petitioner claims that he should be granted a writ of habeas corpus, because "[t]here is not sufficient admissible, credible evidence to establish probable cause for this grand jury indictment." Id., p. 15.

Petitioner raised similar challenges to the grand jury proceedings in his pro se memorandum to the Minnesota Supreme Court in Jones II, but that Court refused to consider any of Petitioner's grand jury claims on the merits. The Court explained that –

> "'[W]hen a case returns to an appellate court after remand, the matters raised and resolved in the original appeal that resulted in the remand, and any claims that were known but not raised in the original appeal, will not be considered.' State v. Greer, 662 N.W.2d 121, 125 (Minn. 2003). Similarly, claims of which a defendant should have known at the time of the original appeal will not be considered on a subsequent appeal. Cf. Black v. State, 560 N.W.2d 83, 85 (Minn. 1997).
>
> In accord with the reasoning underlying Greer, none of Jones's pro se claims will be considered in this second direct appeal.... [At the time of Jones I,] Jones was aware of his claim that exculpatory evidence was not presented to the grand jury – that claim was raised in a previous challenge to the indictment. Jones's other claims all involve alleged flaws in the grand jury proceedings of which he should have been aware at the time of his first appeal. Because Jones's pro se claims either were addressed in, were known at the time of, or should have been known at the time of, his first appeal, they are Greer-barred."

---

[7] The Court finds this particular argument to be inconsistent with Petitioner's testimony at his second trial. At that trial, he testified that he was not with his wife during the entire day of the murder, but, in fact, he spent part of that day at the victim's house, having sex with her. Jones II, 753 N.W.2d at 685.

<u>Jones II</u>, 753 N.W.2d at 697 (emphasis added).

Based on the Minnesota Supreme Court's disposition of Petitioner's grand jury claims in <u>Jones II</u>, Respondents contend that those claims have been procedurally defaulted, and cannot be addressed on the merits here. The Court agrees.

A.  <u>Applicable Legal Rules</u>

When a state appellate court has expressly declined to address a particular claim on the merits because the claim was not raised in accordance with applicable state procedural rules, the claim is considered to be "procedurally defaulted" for federal habeas corpus purposes.  As the Eighth Circuit Court of Appeals explained in <u>Hall v. Delo</u>, 41 F.3d 1248, 1250 (8th Cir. 1994), "[a] federal claim has not been fairly presented to the state courts," and is therefore procedurally defaulted, "when the state court has declined to decide the federal claim on the merits because the petitioner violated a state procedural rule."  <u>See</u> <u>also</u> <u>McCall</u>, 114 F.3d 754, 757 (8th Cir. 1997) ("a federal court may usually only consider 'those claims which the petitioner has presented to the state courts in accordance with state procedural rules'"), quoting <u>Abdullah v. Groose</u>, 75 F.3d 408, 411 (8th Cir.), <u>cert</u>. <u>denied</u>, 517 U.S. 1215 (1996); <u>Satter v. Leapley</u>, 977 F.2d 1259, 1261 (8th Cir. 1992) ("[o]rdinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state courts in accordance with state procedural rules").

A claim that has been procedurally defaulted in the state courts will not be entertained in a federal habeas corpus proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim.

Coleman v. Thompson, 501 U.S. 722, 750 (1991). The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995), cert. denied, 516 U.S. 1161 (1996) (emphasis added), quoting Schlup v. Delo, 513 U.S. 298, 327 (1995). In other words, the petitioner cannot simply point to errors that allegedly occurred during the course of his criminal prosecution; he must instead offer some new evidence which affirmatively demonstrates that he must truly be innocent of the crime for which he was convicted.[8]

The rules governing procedural default have been summarized by the United States Supreme Court as follows:

> "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violations

---

[8] The Court of Appeals has further explained that –

> "The actual innocence exception is concerned with claims of actual, not legal innocence. Anderson v. United States, 25 F.3d 704, 707 (8th Cir. 1994). It is evidence of factual innocence coupled with a constitutional violation which triggers the actual innocence exception. Indeed, a credible claim of actual innocence 'requires [a] petitioner to support his allegation of constitutional error with new reliable evidence....' [Schlup, 513 U.S. at 324.] Examples of evidence which may establish factual innocence include credible declarations of guilt by another, see Sawyer v. Whitley, 505 U.S. 333, 340... (1992), trustworthy eyewitness accounts, see Schlup, 513 U.S. [at 324]... and exculpatory scientific evidence."

Pitts v. Norris, 85 F.3d 348, 350-51 (8th Cir.), cert. denied, 519 U.S. 972 (1996). For purposes of showing actual innocence, "'evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" Johnson v. Norris, 170 F.3d 816, 817 (8th Cir. 1999), quoting Armine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997) (en banc), cert. denied, 523 U.S. 1123 (1998).

of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."

Coleman, 501 U.S. at 750.

### B. Petitioner's Procedurally Defaulted Claims

Respondents contend that Grounds Two, Three and Four of the present petition, which pertain to Petitioner's grand jury proceedings, have been procedurally defaulted, because the Minnesota Supreme Court found that Petitioner had forfeited his right to have those claims reviewed on direct appeal. This argument must be sustained.

The Minnesota Supreme Court refused to consider the merits of any of Petitioner's claims pertaining to the grand jury proceedings in his case, because those claims had not been properly preserved for appellate review in the manner prescribed by the State's procedural rules. The Court explained that Petitioner's grand jury claims were known to him, (or certainly at least knowable), when he filed his first appeal, (Jones I), and under Minnesota law he was required to raise those claims at that time. Because Petitioner failed to comply with this requirement, the Minnesota Supreme Court concluded that Petitioner's grand jury claims were procedurally barred, and could not be reviewed on the merits in Jones II. (See "Discussion" at pp. 10-11, supra, quoting Jones II, 753 N.W.2d at 697.)

"A federal district court is precluded from substantively considering a habeas corpus claim that a state court has disposed of on independent and adequate non-federal grounds, including state procedural grounds." Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004) cert. denied, 546 U.S. 828 (2005). In this case, the Minnesota Supreme Court clearly disposed of Petitioner's grand jury claims solely on state procedural grounds. Jones II, 753 N.W.2d at 697. Based on the Minnesota Supreme Court's disposition of Petitioner's

grand jury claims in <u>Jones II</u>, this Court finds that those claims, (Grounds Two, Three and Four in the current petition), are procedurally defaulted for federal habeas purposes.[9]

C. <u>Cause and Prejudice</u>

Having determined that Petitioner's grand jury claims, (Grounds Two, Three and Four), have been procedurally defaulted, the only remaining issue to be resolved with regard to those three claims is whether Petitioner has shown cause and prejudice, or actual innocence, to excuse his procedural default. The Court finds that Petitioner is unable to satisfy either the cause and prejudice standard, or the actual innocence standard, with regard to his procedurally defaulted claims.

In order to satisfy the "cause" requirement, a prisoner must show that some external impediment prevented him from presenting his claims to the state's highest court in a timely and procedurally proper manner. <u>Coleman</u>, 501 U.S. at 753 ("'cause' under the cause and prejudice test is something <u>external</u> to the petitioner, something that cannot fairly be attributed to him... [f]or example, 'a showing that the factual or legal basis for a claim was not reasonably available... or that some interference by officials made compliance impracticable'"), (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)) (emphasis in the original).

Petitioner has offered nothing more than a one-sentence conclusory assertion that

---

[9] Petitioner may believe the Minnesota Supreme Court misapplied the State's procedural rules to his grand jury claims, but that notion is unavailing, because "it is not the province of a federal court to decide whether a matter ought to be considered procedurally defaulted under state law." <u>Murray v. Hvass</u>, 269 F.3d 896, 899 (8th Cir. 2001), <u>cert. denied</u>, 535 U.S. 935 (2002). <u>See</u> <u>also</u> <u>Clemons</u>, 381 F.3d at 751 ("federal courts do not look at whether state courts have correctly applied their own procedural rules[;] [t]hey simply determine whether those procedural rules were applied to bar the claim").

his procedural default should be excused. ("Plaintiff's Motion Answering The Respondent's Motion In Opposition To The Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus Filed By Plaintiff," [Docket No. 22], p. 25.) He has not identified any specific "cause" for his procedural default, and the Court cannot independently discern any purely external circumstances that could satisfy the "cause" requirement prescribed by Coleman.[10]

Because Petitioner has failed to satisfy the cause component of the cause and prejudice requirement, it is unnecessary to consider whether he could satisfy the prejudice component. Ashker v. Class, 152 F.3d 863, 871 (8th Cir. 1998) (when petitioner "has not shown adequate cause to overcome the procedural bar... we need not consider the issue of actual prejudice"); Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997), cert. denied, 523 U.S. 1010 (1998) (same).

Finally, Petitioner does not qualify for the "actual innocence" exception, because he has offered no new evidence to affirmatively demonstrate that he did not commit the crimes for which he was convicted. All of Petitioner's current claims for relief involve alleged

---

[10] Petitioner might be tempted to argue that his procedural default is attributable to ineffective assistance of appellate counsel in Jones I. (Although, in fact, Petitioner has made no such argument, and the Court finds no reason to believe he would have any grounds to do so.) However, ineffective assistance of counsel cannot serve as cause to excuse a procedural default, unless the proffered ineffective assistance argument has been fairly presented to the state courts as an independent challenge to the validity of the conviction or sentence at issue. Edwards v. Carpenter, 529 U.S. 446, 452 (2000) ("'a claim of ineffective assistance'... must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default'") (quoting Murray v. Carrier, 477 U.S. at 489). See also Bailey v. Mapes, 358 F.3d 1002, 1004 (8th Cir. 2004) ("[a]lthough constitutionally ineffective assistance can serve as a 'cause' excusing a procedural default, the ineffective assistance claim must be raised in the state postconviction proceedings before it can be relied upon in a federal habeas proceeding"). Petitioner has not presented an ineffective assistance of counsel claim to the Minnesota Supreme Court, so ineffective assistance of counsel cannot serve as cause for his procedural default.

procedural errors, which purportedly occurred before or during his trial.  He has not cited

any new and previously undiscoverable evidence, which would prove that he is, in fact,

wholly innocent of the crimes for which he was convicted.  Therefore, he cannot overcome

his procedural default by way of the actual innocence exception.

Because Petitioner is unable to overcome his procedural default of his current grand

jury claims, (Grounds Two, Three and Four), those claims cannot be addressed on the

merits here.[11]


## IV.  PETITIONER'S REMAINING CLAIMS (GROUNDS FIVE, SIX AND SEVEN)

A.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes the

---

[11]  It should be noted that Petitioner's grand jury claims are clearly unsustainable in any event.  Petitioner's ultimate conviction by a petit jury effectively invalidates any post-verdict challenge to the propriety of the grand jury proceedings.  See United States v. Mechanik, 475 U.S. 66, 70 (1986) ("the petit jury's verdict of guilty beyond a reasonable doubt demonstrates a fortiori that there was probable cause to charge the defendants with the offenses for which they were convicted").  See also United States v. Tulk, 171 F.3d 596, 598 (8th Cir. 1999) ("[a]ny injury sustained in the charging process is cured by a subsequent finding of guilt beyond a reasonable doubt"); Lopez v. Riley, 865 F.2d 30, 32-33 (2nd Cir. 1989) (alleged errors in state grand jury proceedings involving "the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, and the presentation of prejudicial evidence" are effectively cured by a petit jury's subsequent guilty verdict, and are not cognizable in a federal habeas corpus proceeding).  Furthermore, it is difficult to imagine how Petitioner's federal constitutional rights could have been violated by anything that may have occurred during the course of his grand jury proceedings, because the federal Constitution does not require states to conduct any grand jury proceedings at all. Cooksey v. Delo, 94 F.3d 1214, 1217 (8th Cir. 1996), cert. denied, 522 U.S. 1027 (1997), citing Hurtado v. California, 110 U.S. 516 (1884).  See also Branzburg v. Hayes, 408 U.S. 665, 688, n. 25 (1972) ("indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment"); Alexander v. Louisiana, 405 U.S. 625, 633 (1972) ("the Court has never held that federal concepts of a 'grand jury'... are obligatory for the States").

standards that govern this Court's substantive review of Petitioner's remaining habeas corpus claims – Grounds Five, Six and Seven. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Supreme Court recognized that

> "a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."

<u>Id</u>. at 405.

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

<u>Id</u>. at 413.

The Court also explained that

"A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.... [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

Id. at 409, 411 (emphasis added).

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the conviction is based on findings of fact that could not reasonably be derived from the state court evidentiary record. When reviewing a state court decision, however, "a federal court... presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

Needless to say, a federal district court is not allowed to conduct its own de novo review of a prisoner's constitutional claims. Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams.

B. Prosecutorial Misconduct Claims (Ground Five)

At Ground Five of Petitioner's habeas corpus petition, he claims that his conviction should be vacated because of prosecutorial misconduct. Petitioner has made this claim somewhat difficult to analyze, because he has not clearly identified each specific incident of alleged prosecutorial misconduct. However, the Court finds that Petitioner's claim

consists of four separate arguments: (1) the prosecutor improperly drew attention to Petitioner's refusal to provide a DNA sample without a warrant; (2) the prosecutor wrongly implied that Petitioner had a duty to voluntarily disclose information, including potentially self-incriminating information, to law enforcement authorities; (3) the prosecutor misinformed the jury about the meaning and significance of the phrase "beyond a reasonable doubt;" and (4) the prosecutor made several derogatory comments about Petitioner and his defense.

Petitioner did not raise any of his current prosecutorial misconduct claims during the course of his trial, but rather, he raised these claims for the first time on direct appeal, (in Jones II). As a result, the scope of review in the State Court was very restricted. The Minnesota Supreme Court explained that "[b]efore an appellate court reviews unobjected-to prosecutorial conduct for error, there must be (1) error; (2) that is plain; (3) that affects substantial rights." Jones II, 753 N.W.2d at 686. The State Court further explained that prosecutorial misconduct does not "affect substantial rights" if "'there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury.'" Id. (citation omitted).

The plain error standard used by the Minnesota Supreme Court is actually more lenient than the standard of review prescribed for prosecutorial misconduct claims raised in federal habeas corpus proceedings. Our Court of Appeals has explained that –

> "As a general rule, 'prosecutorial misconduct does not merit federal habeas relief unless the misconduct infected the trial with enough unfairness to render [a] petitioner's conviction a denial of due process.' Louisell v. Dir. of Iowa Dept. of Corr., 178 F.3d 1019, 1023 (8th Cir.1999) (citations omitted). To amount to a due process violation, improper remarks by a prosecutor

> must be 'so egregious that they fatally infect [] the proceedings and render[] [a defendant's] entire trial fundamentally unfair.' Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir.1985). A petitioner 'must show that there is a reasonable probability that the error complained of affected the outcome of the trial – i.e., that absent the alleged impropriety the verdict probably would have been different.' Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir.1995) (citations omitted)."

Stringer v. Hedgepeth, 280 F.3d 826, 829 (8th Cir.), cert. denied, 537 U.S. 909 (2002).

"'[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned.... Rather, the 'relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Mack v. Caspari, 92 F.3d 637, 643 (8th Cir. 1996), cert. denied, 520 U.S. 1109 (1997), quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986). "Under this standard, a petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial -- i.e., that absent the alleged impropriety, the verdict probably would have been different.'" Mack, 92 F.3d at 643, (emphasis added), quoting Jones v. Jones, 938 F.2d 838, 844-45 (8th Cir. 1991).

Bearing in mind the strict standard of review prescribed by federal law, the Court now considers each of Petitioner's allegations of prosecutorial misconduct.

### (i) Subversion of Petitioner's Fourth Amendment rights

Petitioner first accuses the prosecutor of subverting his Fourth Amendment rights, by drawing attention to the fact that he did not voluntarily provide a sample of his DNA, but did so only after a search warrant was issued. The trial court recognized that Petitioner's assertion of his Fourth Amendment rights should not be used against him at trial. Therefore, the trial court entered a pretrial order, which prohibited the prosecutor from informing the jury that Petitioner had exercised his Fourth Amendment rights by refusing

to provide a DNA sample without a warrant. <u>Jones II</u>, 753 N.W.2d at 687.[12] Petitioner does not contend that the prosecutor violated this order directly, but he contends the prosecutor tried to evade the pretrial order by two indirect means.

First, the prosecutor asked a law enforcement witness about another suspect in this case who refused to provide a DNA sample voluntarily. The witness said that the sample was obtained by means of a search warrant. Later testimony indicated that Petitioner's DNA had been obtained by the issuance of a search warrant. According to Petitioner, this combination of evidence allowed the jury to infer that Petitioner must have refused to give his DNA sample voluntarily, and "[t]his in turn unfairly implied to the jurors that [Petitioner] had refused because he was guilty." (Petitioner's Memorandum, [Docket No. 2], p. 19.)

Second, the prosecutor mentioned during his opening statement that DNA samples had been collected from 80 to 100 people, and most of them provided such samples voluntarily. (<u>Id</u>., p. 22.) The prosecutor also solicited testimony from several witnesses, which showed that they had provided DNA samples voluntarily. (<u>Id</u>., p. 23.) Petitioner contends that these incidents corroborate his first prosecutorial misconduct claim, because they show that the prosecutor tried to draw attention to Petitioner's assertion of his Fourth Amendment rights.


The Minnesota Supreme Court duly acknowledged "[i]t is a violation of the defendant's right to due process for a prosecutor to comment on a defendant's failure to

---

[12] The Minnesota Supreme Court stated that "[a]bsent exceptions not applicable here, a warrant supported by probable cause is necessary to obtain a sample of an individual's DNA." <u>Jones II</u>, 753 N.W.2d at 686. That proposition is not at issue here.

consent to a warrantless search," and "[c]onsequently, it would have been improper for the prosecutor to present <u>direct</u> evidence that [Petitioner] failed to consent to a search." <u>Jones II</u>, 753 N.W.2d at 687, (emphasis in the original).  However, the State Court pointed out that the prosecutor had not directly said, or shown, that Petitioner tried to hide incriminating evidence by exercising his Fourth Amendment rights.  At most, the prosecutor had merely "invited an inference" that Petitioner was uncooperative.  <u>Id</u>.  The State Court also pointed out that Petitioner had "provide[d] no authority to support his position that an inference is sufficient to constitute a violation of due process."  <u>Id</u>.  The Court concluded that "[b]ased on our review of existing law,... an inference based on little more than speculation is not sufficient to constitute a violation of due process."  <u>Id</u>.

The Minnesota Supreme Court also specifically determined that Petitioner's prosecutorial misconduct claim was not sustainable based on the testimony showing that other witnesses had given DNA samples without a search warrant.  The Court explained that –

> "The jury was informed that a warrant was acquired to search the [victim's] residence, and that sometimes warrants are acquired to make certain a search is conducted legally and to prevent a later revocation of consent. Thus, the jury was aware that search warrants are acquired for reasons other than the invocation of one's constitutional rights. <u>Because the jury was never informed that [Petitioner] had refused to consent to a search, the mere mention that other suspects did provide such consent would not have implicated [Petitioner's] failure to consent</u>. On this record, we conclude that the evidence in question was not prejudicial and did not have a substantial effect on the jury verdict."

<u>Id</u>. at 687-88 (emphasis added).

The state courts, both trial and appellate, obviously recognized that the prosecutor could not deliberately try to show that Petitioner's assertion of his Fourth Amendment rights

was evidence of his guilt. However, the prosecutor's conduct in this case merely allowed for a <u>possible inference</u> that Petitioner asserted his constitutional rights in an effort to hide his guilt. The Minnesota Supreme Court concluded that (a) there is no "existing law" forbidding the mere possibility that such an inference could be drawn by a jury, (<u>id</u>. at 687), and (b) in the particular circumstances of this case, the inference was too attenuated to be constitutionally significant, (<u>id</u>. at 687-88). Petitioner has made no effort to show that this conclusion is contrary to, or constitutes an unreasonable application of, any decision of the United States Supreme Court.

This Court, like the Minnesota Supreme Court, is unaware of any decision by the United States Supreme Court that expressly or implicitly prohibits prosecutors from making any statements, or presenting any evidence, from which a jury <u>might infer</u> that a criminal defendant exercised his Fourth Amendment rights. Furthermore, this Court finds no reason to question the State Court's determination that "the evidence in question... did not have a substantial effect on the jury verdict." <u>Id</u>. at 688. Therefore, Petitioner's first prosecutorial misconduct claim, based on the alleged infringement of his Fourth Amendment rights, must be denied.

### (ii) Implied duty to disclose information

Petitioner's next prosecutorial misconduct claim is based on the prosecutor's comments and solicitation of evidence pertaining to Petitioner's pre-arrest interactions with the police. Petitioner talked to law enforcement officials on at least three separate occasions not long after Linda Jensen was murdered: first, when the police canvassed Petitioner's neighborhood the day after the murder; second, when Petitioner was stopped for speeding a few days after the murder; and third, when an officer visited a car dealership

where Petitioner was working. On each of those occasions, Petitioner could have told the police that he knew Linda Jensen, (and that he had sex with her on the day she was murdered), but he never mentioned it. According to Petitioner, the prosecutor tried to call the jury's attention to these matters, hoping that the jury would infer that Petitioner was deliberately unhelpful, because he did not want his crime to be discovered. Petitioner contends that the prosecutor's actions "improperly fault[ed] [Petitioner] for not coming forward and telling what he did or didn't know by implying he had no right to remain silent," and "wrongly implied [Petitioner] was obligated to help the State investigate the case, and that not doing so implied guilt." (Petitioner's Memorandum, [Docket No. 2], p. 21.)

The Minnesota Supreme Court acknowledged that criminal defendants have a constitutional right to remain silent <u>after</u> being arrested, and that the right to remain silent also "prevents the prosecution from commenting [at trial] on the silence of a defendant who asserts that right." <u>Jones II</u>, 753 N.W.2d at 688. In this case, however, Petitioner is challenging the prosecutor's use of his <u>pre</u>-arrest silence. The State Court pointed out that if a criminal defendant elects to testify at trial, "'the Fifth Amendment is not violated by the use of pre-arrest silence to impeach [his] credibility.'" <u>Id</u>., quoting <u>Jenkins v. Anderson</u>, 447 U.S. 231, 238 (1980). The State Court further found that the United States Supreme Court "has not yet addressed the question" of "whether a prosecutor may elicit testimony of pre-arrest silence <u>before a defendant testifies</u> at trial." <u>Jones II</u>, 753 N.W.2d at 688 (emphasis added).

The Minnesota Supreme Court ultimately concluded that, in the absence of an objection by defense counsel, the prosecutor could not be faulted for calling attention to

Petitioner's pre-arrest silence, even before he testified, because it has not yet been "conclusively resolved" whether or not that practice is permissible.  Id. at 689.

Once again, Petitioner has made no effort to show that the Minnesota Supreme Court decided his claim in a manner that was contrary to, or an unreasonable application of, any decision of the United States Supreme Court.  This Court, like the State Court, has not found any decision by the United States Supreme Court, which holds, or suggests, that prosecutors are constitutionally forbidden from making a statement, or soliciting testimony, which points out that a defendant declined to talk to the police prior to his arrest.  Thus, Petitioner is unable to show that the Minnesota Supreme Court's resolution of his pre-arrest silence claim is contrary to, or an unreasonable application of, any U.S. Supreme Court precedent.  See Mitchell v. Lafler, 118 Fed.Appx. 24, 27 (6th Cir. 2004) ("[t]he lack of a Supreme Court decision regarding whether the prosecution may introduce evidence of a defendant's prearrest silence during its case in chief precludes federal habeas relief"), cert. denied, 544 U.S. 983 (2005).

Furthermore, Petitioner is unable to show that the jury's verdict probably would have been different if his earliest conversations with law enforcement officials had not been brought up during his trial.  Petitioner had an opportunity to explain why he did not tell the police about his encounters with the victim, (i.e., he was afraid he would become a suspect if he discussed such matters), and the jury had an opportunity to evaluate the credibility of Petitioner's explanation for his silence.  The Court finds no reason to believe that the jury would have reached a different verdict if Petitioner's pre-arrest silence had not been mentioned at all.  For this additional reason, Petitioner's second prosecutorial misconduct claim cannot succeed.

### (iii) Misinforming the jury about "beyond a reasonable doubt"

Petitioner next argues that –

"The prosecutor violated [Petitioner's] 5th. Amendment due process and 6th. Amendment jury-trial-and-counsel rights by distorting and disparaging the concepts of reasonable doubt, the State's burden of proof, and a defendant's right to counsel when he said, with respect to reasonable doubt not meaning beyond all possibility of doubt."

(Petitioner's Memorandum, [Docket No. 2], p. 23.)

The Minnesota Supreme Court described this argument as follows:

"[Petitioner] argues that the prosecutor undermined the presumption of innocence.  Specifically, the prosecutor argued that, if reasonable doubt means beyond all possibility of doubt, 'society could never protect itself against those individuals who seek to deny their guilt in order to avoid the consequences of their own actions.  Nor, Ladies and Gentlemen, does it mean doubt created by the ingenuity or the imagination... of counsel.'"

Jones II, 753 N.W.2d at 691.

The State Court found that the prosecutor's comments about "beyond a reasonable doubt" did not improperly undermine Petitioner's constitutional right to a presumption of innocence.  Id.  Petitioner has failed to explain why he thinks the State Court's determination is contrary to, or an unreasonable application of, apposite decisions by the United States Supreme Court.  The prosecutor did not denounce the presumption of innocence, or suggest that Petitioner was obliged to prove his innocence; the prosecutor merely stated a truism – "beyond a reasonable doubt" does not mean "beyond all possibility of doubt."

There is no indication that the jury was not properly instructed about the presumption of innocence, or the meaning of "beyond a reasonable doubt," and Petitioner has offered

no reason to think that the jury might have been confused about those concepts. Therefore, even if the prosecutor's choice of words was somehow improper, (which seems doubtful), this Court could not conclude that those words alone deprived Petitioner of a fair trial, and probably caused the jury to find him guilty.

### (iv) Derogatory comments about Petitioner and his defense

Finally, Petitioner accuses the prosecutor of making a number of demeaning and derogatory remarks about him during the course of the trial. The specific remarks identified in the petition are as follows: (1) the prosecutor said Petitioner used an "old trick" when he attempted to besmirch the victim's character, by saying that she was "interested in a three-way sexual encounter," (Petitioner's Memorandum, [Docket No. 2], p. 23); (2) the prosecutor cross-examined Petitioner about an occasion when "he had extra-marital sex with another woman, while his wife was in the hospital with an emotional breakdown," (id); (3) the prosecutor said it appeared that Petitioner "would rather climb a tree and tell a falsehood than stand on the ground and tell the truth," (id.); and (4) the prosecutor mocked Petitioner by referring to him as a "great lover," and by calling him "cheap" because he took flowers from a table at a restaurant and presented them to his mistress-date as a gift, (id. at 24). Petitioner does not claim these matters were false or fabricated; but rather, he claims that the prosecutor deliberately tried to characterize these matters in a manner designed to "evoke[ ] contempt" for Petitioner. (Id., p. 23.)

The Minnesota Supreme Court considered each of the prosecutor's allegedly derogatory remarks, and concluded that none of them warranted relief. The State Court pointed out that the remarks about Petitioner being "cheap" (because he took flowers from another table at a restaurant), and being "a great lover," were "colorful," but "fairly based

27

on the evidence." <u>Jones II</u>, 753 N.W.2d at 691-92.[13]  The remark about Petitioner having sex with another woman while his wife was in the hospital "painted [Petitioner] in a bad light," but it was found <u>not</u> to be "'gratuitous' or [an] unfair attack on his character." <u>Id</u>. at 691.  The remark about Petitioner's proclivity for telling falsehoods was found to be "extremely argumentative," but the State Court concluded that it did not unduly prejudice Petitioner's right to a fair trial, because even without the prosecutor's objectionable comment, Petitioner's "credibility and trustworthiness were seriously damaged by his admission that he had sex with [the victim] the morning of the murder and that he had changed his story several times between the murder and the second trial." <u>Id</u>.

The Minnesota Supreme Court found that it was improper for the prosecutor to characterize Petitioner's defense strategy as "an old trick." <u>Id</u>. at 692.  However, that impropriety was found to be "not prejudicial," and the State Court concluded that it "did not affect the outcome of the trial." <u>Id</u>.

The <u>Jones II</u> opinion shows that the Minnesota Supreme Court considered the prosecutor's challenged remarks in light of the entire record in this case, and concluded that (a) most of those remarks were not improper, and (b) those remarks that were improper did not have a verdict-changing impact.  The State Court explained that the prosecutor's improper remarks did not deny Petitioner due process for the following reasons:

> "The case against [Petitioner] was very strong. [Petitioner] admitted, and the evidence established, that he had sexual intercourse with [the victim] the

---

[13]  According to the Minnesota Supreme Court, Petitioner "claimed at trial that he was a skilled lover and that [the victim] had come to him for 'more spice.'" <u>Jones II</u>, 753 N.W.2d at 692.

morning of the murder. [Petitioner's] credibility was seriously undermined by the inconsistent statements he made to police and his admission that he perjured himself in the first trial. [Petitioner's] argument that Charles Jensen [the victim's husband] was the perpetrator of the murder was undermined because Charles had an alibi that was confirmed by the police. Further, [Petitioner's] contention that he had an affair with [the victim] was not supported by the record. Moreover, the two instances of misconduct we have identified were not a significant part of the State's closing argument, and [Petitioner] had the opportunity to correct the prosecutor's comments in his own closing argument. Also, the jury was instructed on the burden of proof, presumption of innocence, witness credibility, and the difference between evidence and the arguments of counsel. Thus, we conclude that the State has demonstrated that, viewed in light of the closing argument as a whole, the prosecutor's misconduct was not prejudicial and did not affect defendant's right to a fair trial."

Jones II, 753 N.W.2d at 693.

Petitioner obviously disagrees with this determination, but he has not identified any specific flaw in the State Court's analysis.

As Respondents have correctly noted, the Eighth Circuit Court of Appeals has been very reluctant to grant habeas corpus relief to state prisoners, based solely on objectionable prosecutorial rhetoric. The Circuit Court has specifically observed that –

"The absence of a timely objection is particularly significant to a claim of prosecutor misconduct in closing argument. Defense counsel heard the alleged misconduct and was in a far better position to judge its significance to the trial than an appellate court reading a cold transcript. The trial court also heard the alleged misconduct and likewise was in a better position to judge its significance. The trial court has the power to intervene sua sponte, for example, with a criticism of the prosecutor or a cautionary instruction. But that sort of interruption risks frustrating defense counsel's tactical decision not to object. See Darden,... [477 U.S. at 182-83 & n. 14]. The combination of these factors – the strict due process standard of constitutional review, the deferential review mandated by AEDPA, and our less reliable vantage point for gauging the impact of closing argument on the overall fairness of a trial – calls for an exceptionally limited review of this issue. Federal habeas relief should only be granted if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial."

James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999), cert. denied, 528 U.S. 1143 (2000) (emphasis added).

In cases involving comments far more egregious than those at issue here, the Court of Appeals has found that habeas petitioners were not denied due process. The case of Kellogg v. Skon, 176 F.3d 447 (8th Cir. 1999), is particularly informative. There, the Court analyzed a habeas petitioner's prosecutorial misconduct claim as follows:

> "[T]he prosecutor also referred to [the petitioner] as a 'monster, a 'sexual deviant,' and a 'liar.'... [Footnote omitted.] Not only are these comments an improper 'personal expression of [the] defendant's culpability,...' [citation omitted] but the 'monster' and 'sexual deviant' comments also create inflammatory prejudice. They compel the jury to focus on the grossness of the alleged conduct, rather than whether the defendant engaged in the conduct. They have no place in a courtroom. However, the question is not whether the prosecutor's remarks are 'undesirable or even universally condemned.'... The remarks must make the entire trial fundamentally unfair.... The court instructed the jury that they were to make their decisions based on the evidence and that counsel's arguments were not evidence. These comments did not 'manipulate or misstate the evidence,' nor did they 'implicate other specific rights of the accused.'... The weight of the evidence was heavy, and there is no reasonable probability that the verdict would have changed absent the comments, even considering the cumulative effect of the prosecutor's remarks."

Id. at 451-52 (citations to Darden, supra, omitted). The foregoing analysis from Kellogg is fully applicable here.

C.  Spousal Testimony Claim (Ground Six)

Petitioner next argues, (as Ground Six of his petition), that his conviction should be vacated because the trial court required his wife to testify about their sexual relationship. Petitioner had called his wife as a witness to testify in support of his defense, Jones II, 753 N.W.2d at 693, and during cross-examination, the prosecutor asked her whether Petitioner had experienced problems maintaining an erection due to back problems. Petitioner's wife

answered in the affirmative, and the prosecutor then asked her whether that affected their sexual activities – specifically whether she would be on top of him during sex. (Petitioner's Memorandum, [Docket No. 2], pp. 24-25.) Petitioner's wife indicated that she did not want to answer that question, but Petitioner himself did not object to the question. Jones II, 753 N.W.2d at 693. The trial court directed Petitioner's wife to answer the prosecutor's question, (id.), and she said "yes." (Petitioner's Memorandum, [Docket No. 2], p. 25.)

Although Petitioner did not object at the time, he now contends that the trial court should not have allowed his wife to testify about their sexual relationship, because (i) the testimony was barred by Minnesota's marital privilege statute, Minn.Stat. § 595.02, subd. 1(a); (ii) the testimony was barred by the relevancy requirements of the Minnesota Rules of Evidence, Minn. R. Evid. 403; and (iii) the testimony violated his constitutional right to due process. (See "Plaintiff's Motion Answering The Respondent's Motion In Opposition To The Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus Filed By Plaintiff," (Docket No. 22), pp. 32-35.)

Petitioner's first two arguments, which are based on Minn.Stat. § 595.02, subd. 1(a), and Minn. R. Evid. 403, cannot be entertained here, because a state court's interpretation or application of state law is not reviewable in a federal habeas corpus proceeding. Federal habeas corpus review of a state criminal conviction is available only for claims involving federal constitutional issues. The United States Supreme Court has repeatedly held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (emphasis added). See also Wainwright v. Goode, 464

U.S. 78, 83 (1983) (per curiam) ("[i]t is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension"); Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam) ("[w]e have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus").  Therefore, this Court cannot properly address whether the testimony at issue should have been excluded pursuant to Minn.Stat. § 595.02, subd. 1(a), and/or Minn. R. Evid. 403.

Petitioner also argues that his wife's testimony about their sex life violated his rights under the Due Process Clause of the Fourteenth Amendment.  That argument is reviewable here.  See Bailey v. Lockhart, 46 F.3d 49, 50 (8th Cir. 1995) (because "[a] state court's evidentiary ruling is a matter of state law," federal courts "may examine the ruling in a habeas proceeding only to determine whether the asserted error denied due process"). "To establish a due process violation warranting federal habeas relief, [a habeas petitioner] must prove that the [evidentiary] error was 'so gross'... 'conspicuously prejudicial'... or otherwise of such magnitude that it fatally infected the trial and failed to afford [the petitioner] the fundamental fairness which is the essence of due process." Kerr v. Caspari, 956 F.2d 788, 789 (8th Cir. 1992), quoting Rainer v. Department of Corrections, 914 F.2d 1067, 1072 (8th Cir. 1990), cert. denied, 498 U.S. 1099 (1991).  See also Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998) (same).

The Eighth Circuit Court of Appeals has observed that "[r]ulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation." Nebinger v. Ault, 208 F.3d 695, 697 (8th Cir. 2000).  A habeas petitioner who claims that a state court evidentiary ruling violated his federal constitutional rights faces a

very heavy burden of persuasion. "'To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial – i.e., that absent the alleged impropriety the verdict <u>probably</u> would have been different.'" <u>Gee v. Groose</u>, 110 F.3d 1346, 1350 (8th Cir. 1997) (emphasis added), quoting <u>Anderson v. Goeke</u>, 44 F.3d 675, 679 (8th Cir. 1995). <u>See</u> <u>also</u> <u>Harris v. Bowersox</u>, 184 F.3d 744, 752 (8th Cir. 1999) (same), <u>cert</u>. <u>denied</u>, 528 U.S. 1097 (2000).

In this case, Petitioner contends that he was denied due process because the prosecutor's questions regarding his sexual relationship with his wife were "crude and demeaning," and were intended to "embarrass and humiliate" Petitioner and his wife. (Petitioner's Memorandum, [Docket No. 2], p. 25.) He further contends that his wife's answers to those questions "likely focused the jury on improper factors such as [Petitioner's] sexuality." (<u>Id</u>.)

The Minnesota Supreme Court analyzed Petitioner's "marital privilege" claim in accordance with applicable due process principles, and correctly considered whether the testimony at issue "had a significant effect on the jury verdict." <u>Jones II</u>, 753 N.W.2d at 695. This is consistent with, and not contrary to, applicable federal law.

The State Court determined that --

"The mention of Jones's sexual relations with his wife was brief and revealed that Jones had some difficulty in performing sexually. Such testimony might have helped Jones's defense by undermining the State's effort to portray him as a violent sexual predator. To the extent that such testimony focused the jury's attention on Jones's sexuality, such focus was unavoidable. During cross-examination, Jones repeated the substance of his wife's testimony, thereby lessening the harmful impact of any error."

<u>Id</u>.

Based on this reasoning, the Minnesota Supreme Court found "no reasonable

likelihood" that the brief testimony regarding Petitioner's sexual relationship with his wife "had a significant effect on the jury verdict." Id. Petitioner has failed to establish that this resolution of his due process claim was "objectively unreasonable."

The question posed to Petitioner's wife could, perhaps, be characterized as "crude and demeaning," or "embarrass[ing] and humiliat[ing]," (as Petitioner argues), but that does not mean her answer to the question changed the outcome of the trial. Petitioner's wife's testimony might have caused some jurors to briefly be more conscious of Petitioner's "sexuality," but the jurors had much more obvious reasons to be aware of that subject – most notably, Petitioner's own admission that he had sex with the victim during the day when she was murdered.

In sum, it was not objectively unreasonable for the Minnesota Supreme Court to conclude that the testimony at issue probably had no significant effect on the outcome of Petitioner's trial. Therefore, Petitioner cannot be granted a writ of habeas corpus based on the admission of that testimony.

D. "Right To Present Defense" Claim (Ground Seven)

In Petitioner's final claim for relief, (Ground Seven), he contends that he was deprived of his constitutional right to present a defense, because the trial court prohibited him from presenting hearsay testimony about two matters that allegedly would have fortified his defense. The first of those matters involved allegations that the victim had been sexually abused by her husband, Charles Jensen. Petitioner wanted to introduce the testimony of two friends of the victim, who purportedly heard the victim say that she had been abused by her husband on two occasions – once during the victim's first marriage to Charles Jensen, and a second time after the couple divorced and before they remarried.

Petitioner also sought to introduce hearsay testimony from a real estate agent who allegedly had a conversation with the victim about six months before she was murdered. The real estate agent purportedly would have testified that the victim was seeking an appraisal of her home, because she thought she might be getting divorced.

Petitioner contends that the expected testimony about these two matters, – i.e., the abuse and the divorce – was important to his defense. According to Petitioner, the abuse testimony would have suggested that the victim might have been killed by her husband, and the divorce testimony would have supported Petitioner's claim that he was having an affair with the victim. However, the trial court determined that under the Minnesota Rules of Evidence and applicable state case law, Petitioner was precluded from introducing the proffered testimony about these two matters.

On Petitioner's direct appeal, he argued that the trial court had misapplied Minnesota's state evidentiary rules, and as a result, he had been deprived of his constitutional right to present evidence supporting his defense. The Minnesota Supreme Court determined that (a) the evidence at issue was properly excluded under apposite Minnesota law, and (b) even if the evidence was wrongly excluded, Petitioner's federal constitutional rights were not violated, because any such error was harmless beyond a reasonable doubt. Jones II, 753 N.W.2d at 695-97. Petitioner is challenging that determination here.

"It is well established that the Fourteenth Amendment, along with the Sixth Amendment, guarantee criminal defendants the opportunity to present a complete defense, including the right to present relevant testimony." Boysiewick v. Schriro, 179 F.3d 616, 620 (8th Cir. 1999), cert. denied, 528 U.S. 1141 (2000). "The Constitution does not, however,

guarantee that criminal defendants may call every witness they choose." Khaalid v. Bowersox, 259 F.3d 975, 978 (8th Cir. 2001), cert. denied, 535 U.S. 1021 (2002), citing United States v. Scheffer, 523 U.S. 303, 308 (1998). "An accused 'does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" Khaalid, 259 F.3d at 978, quoting Taylor v. Illinois, 484 U.S. 400, 410 (1988).

As discussed above, the admission or exclusion of evidence in state court cases is determined by state law, and state court rulings on evidentiary issues normally are not reviewable in federal habeas corpus proceedings. (See "Discussion" at pp. 31-32, supra.) The Court has already pointed out that "[a] state court's evidentiary ruling is a matter of state law, and [federal courts] may examine the ruling in a habeas proceeding only to determine whether the asserted error denied due process." Bailey, 46 F.3d at 50. The Court has also pointed out that in order "[t]o establish a due process violation warranting federal habeas relief, [a habeas petitioner] must prove that the [evidentiary] error was 'so gross'... 'conspicuously prejudicial'... or otherwise of such magnitude that it fatally infected the trial and failed to afford [the petitioner] the fundamental fairness which is the essence of due process." Kerr, supra. More specifically, the petitioner must show that "absent the alleged impropriety the verdict probably would have been different." Gee, 110 F.3d at 1350 (citations omitted). As summarized by the Court of Appeals:

> "The exclusion of a witness based on state evidentiary rules results in the denial of due process only if there was an impropriety so egregious that it made the entire proceeding fundamentally unfair.... To meet this burden, a habeas petitioner must show that 'absent the alleged impropriety the verdict probably would have been different.'..."

Skillicorn v. Luebbers, 475 F.3d 965, 972 (8th Cir.), cert. denied, 552 U.S. 923 (2007)

(citations omitted).

In this case, the Minnesota Supreme Court correctly recognized Petitioner's constitutional right to present a defense, stating that –

> "A criminal defendant has a constitutional right to 'a meaningful opportunity to present a complete defense.' <u>California v. Trombetta</u>, 467 U.S. 479, 485... (1984). That right encompasses, among other things, 'the right to present the defendant's version of the facts... to the jury so it may decide where the truth lies.' <u>Washington v. Texas</u>, 388 U.S. 14, 19... (1967). In presenting a defense, however, 'the accused... must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' <u>Chambers v. Mississippi</u>, 410 U.S. 284, 302... (1973)."

<u>Jones II</u>, 753 N.W.2d at 695.

This recitation of the applicable legal principles is consistent with, <u>not</u> contrary to, the apposite federal law discussed above. Therefore, Petitioner cannot be granted a writ of habeas corpus on this claim, unless he can show that the State Court's application of the law was "objectively unreasonable." <u>See</u> <u>Marcrum v. Luebbers</u>, 509 F.3d 489, 504 (8th Cir. 2007) ("[b]ecause the state courts correctly identified the governing legal rules... only the 'unreasonable application' clause... concerns us here"), <u>cert</u>. <u>denied</u>, 129 S.Ct. 754 (2008). To establish that the state courts' application of the law was "objectively unreasonable," so as to warrant habeas corpus relief, Petitioner must affirmatively demonstrate that the outcome of his trial probably would have been different if the trial court had allowed him to introduce the evidence at issue. <u>Gee</u>, <u>supra</u>.

With regard to Charles Jensen's alleged abuse of the victim, the Minnesota Supreme Court pointed out that Petitioner had offered "only two vague hearsay statements as proof of those acts," which failed to "indicate[ ] that the occurrence of the prior bad acts was

'highly probable.'" <u>Jones II</u>, 753 N.W.2d at 696. The Court also found that the "lack of detail" of the proffered witness statements would "render their exclusion harmless beyond a reasonable doubt, given the unlikelihood that the verdict would have been changed by an unsubstantiated allegation of past abuse." <u>Id</u>.

The proffered testimony regarding a potential divorce was found to be "not trustworthy," because the expected witness, (i.e., the real estate agent), "questioned the truthfulness of the information given by customers in the real estate business," and indicated that the victim "seemed very 'wishy-washy' and had retreated from her comment about a possible divorce." <u>Id</u>. It was noted that the information Petitioner sought to elicit from the real estate agent "was not reported to the police until nearly 15 years after the murder, and the witness herself questioned its veracity." <u>Id</u>. at 697. The Minnesota Supreme Court concluded that even if the trial court erred, and the real estate agent's hearsay testimony should have been admitted, "such error was harmless beyond a reasonable doubt." <u>Id</u>. the Court explained that --

> "The excluded statement is open to a multitude of explanations... and would, at best, provide <u>weak support</u> for [Petitioner's] claim that he and [the victim] had engaged in a consensual affair. Any impeachment value of the statement would have been <u>negligible</u>, given the ample testimony regarding the strength of the Jensen marriage."

<u>Id</u>. at 697 (emphasis added).

In sum, the Minnesota Supreme Court carefully considered the hearsay evidence at issue, and determined that the evidence was properly excludable under Minnesota law. The State Court also determined that even if the evidence at issue were admissible, the exclusion of that evidence was "harmless error," because the evidence probably would <u>not</u> have changed the outcome of the trial. This assessment of the evidence is <u>not</u> objectively

unreasonable.

It is noteworthy that all of the evidence at issue was hearsay. Because the declarant, (i.e., the victim), was unavailable for examination and cross-examination at trial, the probative value of the evidence was inherently limited. See United States v. Johnson, 535 F.3d 892, 898 (8th Cir. 2008) ("'[t]he primary justification for the exclusion of hearsay is the lack of any opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is introduced into evidence'") (citation omitted). The Minnesota Supreme Court pointed out the evidence at issue was old, and the evidence was "vague," "lacking in detail" and "very 'wishy-washy.'" The evidence was not corroborated by other admissible evidence. See Skillicorn, 475 F.3d at 971 (habeas petitioner was not denied due process by exclusion of purportedly exculpatory hearsay evidence that "lacked corroboration"). And the evidence was contradicted by other more reliable evidence regarding "the strength of the Jensen marriage." Jones II, 753 N.W.2d at 697.

In light of the substantial weaknesses of the evidence at issue, it was not "objectively unreasonable" for the Minnesota Supreme Court to conclude that the admission of such evidence probably would not have changed the outcome of the trial. Because the State Court correctly identified the applicable legal principles, and applied those principles in a manner that was not "objectively unreasonable," Petitioner cannot be granted a writ of habeas corpus on his "right to present a defense" claim.

## V. CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability, ("COA"). 28 U.S.C. §

2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted, unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. Daniel, 529 U.S. 473, 484 (2000).

In this case, the Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Petitioner's claims any differently than they have been decided here. Petitioner has not identified, (and the Court cannot independently discern), anything novel, noteworthy or worrisome about this case that warrants appellate review. It is therefore recommended that Petitioner should not be granted a COA in this matter.

## VI. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254, (Docket No. 1), be DENIED;

2. This action be DISMISSED WITH PREJUDICE; and

3. Petitioner should NOT be granted a Certificate of Appealability.

Dated: June 9, 2010

s/ *Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 23, 2010**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.